NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUNG HO KIM, | **Hon. Dennis M. Cavanaugh** |
| Appellant, | **OPINION** |
| v. | Civil Action No. 10-CV-0041 (DMC) |
| PARKLANE, INC., et al, | |
| Appellees. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Sung Ho Kim ("Appellant") to stay a sale of the sole asset of the bankruptcy estate pending appeal. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering all submissions, it is the decision of this Court that Appellant's motion to stay the sale is **denied.**

## I.   BACKGROUND[1]

On or about September 26, 2002, Parklane was organized under the laws of the State of New Jersey, namely the "New Jersey Business Corporation Act." N.J.S.A. § 14A:1-1, *et seq*. On or about December 4, 2003, the original incorporators (and then sole shareholders) Kwang Keh ("Keh"), Wan

---

[1] The facts contained herein are adopted from the parties' respective moving papers.

Hui Nam ("Nam") and Chun Sik Pak ("Pak") executed a certain Shareholder Agreement (the "Shareholder Agreement") whereby, *inter alia*, they adopted the Corporation's Bylaws (the "Bylaws"). The Shareholder Agreement provides that the purpose of the corporation was "to engage in the business of developing the property that the corporation owns at 2 West Harriet, Palisades Park, New Jersey, by constructing and managing a retail and executive center." The Shareholder Agreement further provides that "the corporation will not engage in any *other* business unless 100% of the issued and outstanding voting shares agree." The Organizational Resolutions adopted by the Board of Directors of Parklane, Inc. also provided that the Corporation will not engage in any other business unless one 100% of the corporation's issued and outstanding voting shares agree.

On or about June 7, 2005, Keh, Pak and Nam entered into an Agreement with Appellant whereby Appellant was granted a twenty-five (25%) percent equity interest in the corporation in consideration for a payment by Appellant in the sum of $1,280,000. Pursuant to the agreement with Appellant, the parties agreed that the Shareholders Agreement of December 4, 2003 would be deemed to include Appellant and that all parties agreed to be bound by that agreement.

On August 8, 2009, Parklane filed a Verified Complaint and Application for an Order to Show Cause why Mr. Pak should not sign a corporate resolution on Appellant's behalf authorizing the sale of the Palisades Park Property or alternatively, to permit Parklane, Inc. to close the transaction without the specific consent of Appellant. See Parlane, Inc. And Chun Sik Pak v. Sung Ho Kim and Oritani Bank, Docket No. C-252-09.  On September 8, 2009, the Honorable Robert P. Contillo, J.S.C. denied this application.

Oritani Bank is the holder of a Note, dated July 3, 2007, pursuant to a Mortgage and Security

Agreement granting Oritani a first priority mortgage on the Pallisades Park Property, as well as a valid and duly recorded Assignment of Rents.  The principal amount on the Note is $10,350,000. Upon default by Parklane, Inc., Oritani instituted a foreclosure proceeding in the Superior Court of New Jersey, County of Bergen. See Oritani Bank v. Parklane, Inc.,et. al., Docket No. F-38565-08.

On September 20, 2009, a notice scheduling a Special Meeting of the Board was provided to all parties. Telephonic notice was given to all Directors.  On October 5, 2009, a Special Meeting was conducted in which Nam, Pak and Keh voted in favor of filing a Chapter 11 bankruptcy petition. On October 7, 2009, a voluntary petition was filed by Parklane, Inc. in the United States Bankruptcy Court for the District of New Jersey.  The petition was filed on the eve of foreclosure. Originally, filed as a Chapter 11 proceeding, the Bankruptcy Court converted the matter into a Chapter 7 proceeding.

Appellant did not consent to the filing of this petition and explicitly disputes the validity of the filing.  On November 12, 2009, Appellant filed a motion to dismiss the petition before the bankruptcy Court that was denied on December 8. 2009. Subsequently, Mr. Kim filed an appeal of that denial before this Court. On January 8, 2010, a court appointed Trustee, Robert Wasserman ("Trustee"), in the parallel bankruptcy proceeding filed a motion for sale.   In that motion, the Trustee proposed to sell the property at issue to Pine Tree Enterprises, LLC for the sum of $12,673,000. The sale motion outlines secured creditors in order of priority.  Pursuant to the motion for sale, Oritani Bank, holding a primary mortgage in the amount of $14,400,000, has agreed to accept a reduced amount of $12,000,000.  Sae-Han Bank holding a secondary mortgage in the amount of $1,617,414.50 has agreed to accept a reduced amount of $423,000. Lastly, J.K. Plaza

3

holding a secondary mortgage in the amount of $290,000 has agreed to accept a reduced amount of $150,000. The motion directs that the balance of the sale, $100,000, will be retained by the bankruptcy estate as "carve-out" from Oritani's collateral pursuant to 11 U.S.C. § 506(c). The Trustee attached an appraisal of the property, dated December 24, 2008, valuing the property between $12,700,000 and $13,000,000. The proposed sale has been advertised in the Bergen County Record and at least two separate Korean publications.

On February 17, 2010, Appellant's motion to stay the sale was denied on the record before the Bankruptcy Court. Appellant now moves before this Court for a stay of the sale pursuant to Fed. Bankr. R. 8005 pending a final disposition of the matter on appeal before this Court. The motion for sale is scheduled to be heard before the Bankruptcy Court in this matter on March 2, 2010.

## II. DISCUSSION

Pursuant to Federal Bankruptcy Rule 8005, titled Stay Pending Appeal,

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court. . . .

In determining whether a motion to stay pending appeal should be granted, courts have applied the standard as set forth in Family Kingdom, Inc. v. EMIF New Jersey Limited Partnership, 225 B.R. 65 (D.N.J. 1998). In re GI Holdings, Inc., 2009 U.S. Dist. LEXIS 108339, *177 (D.N.J. Nov. 12,

4

2009.  In Family Kingdom, the Court indicated the following,

> [i]n order to determine whether to grant a stay pending appeal, [the] court considers the following factors: (1) whether the appellant is likely to succeed on the merits of the appeal; (2) whether the appellant will suffer irreparable injury if the stay is not granted; (3) whether a stay would substantially harm other parties in the litigation; [and] (4) whether a stay is in the public interest.

Id.  "While other decisions relax the likelihood of success on the merits prong when the moving party satisfies the remaining factors, the Family Kingdom [C]ourt noted that this was not the rule in the Third Circuit for stays of bankruptcy court orders pending appeal."  Id.  "Thus, the court may grant a motion seeking a stay pending appeal when the moving party satisfies all four factors."  Id.

"Fed. R. Bank. P. 8005 patently requires that Appellant show why the Bankruptcy Court did not grant the requested stay."  Secivanovik v. Jacobson, 2006 U.S. Dist. LEXIS 57290, *5 (D.N.J. Aug. 15, 2006).  "Another district court has held that a party failing to indicate the reasons for a bankruptcy judge's denial of a motion to stay has 'failed to make the necessary showing for the Court to enter a stay' pursuant to Rule 8005."  Id.. (citing In re Duncan, 107 B.R. 758, 759 (W.D. Okla. 1988)).

    A.    Likelihood of Success on the Merits

Appellant contends that he is likely to succeed on the merits of appeal presently before this Court.  Appellant asserts that in the absence of 100% of consent of Debtor's issued and outstanding voting shares, the bankruptcy petition was filed without proper authorization. Relying on In re Industrial Concerns, Inc., Appellant argues that the filing of a Chapter 11 bankruptcy petition is outside the scope of ordinary business, therefore, the board of directors was not permitted to file a voluntary petition in the absence of 100% consent of all voting shares. 289 B.R. 609 (W.D. Pa.

5

2003). As a result, Appellant contends that the Bankruptcy Court's holding to the contrary constitutes clear error.

By way of contrast, Appellees assert that the Bankruptcy Court determined by looking to the relevant Bylaws and other relevant Corporate Documents that unanimous shareholder approval was only required for entry into "other" business and that a voluntary bankruptcy petition does not constitute "other" business. Further, Appellees contend that the Industrial Concerns case is inapposite, holding that the authority to file a bankruptcy petition is indeed vested in a board of directors.

The Court agrees. As an initial matter, the foregoing case concerns and assesses an issue pursuant to Pennsylvania Business Corporation Law, not New Jersey Business Corporation Law. The corporation at issue was established pursuant to New Jersey Corporation Law.

Nonetheless, to the extent the parties find this case instructive, notably, "[t]he decision to initiate a voluntary bankruptcy case on behalf of a corporation must be made by those persons having the power of managing the corporation." Id. at 617 (citing Price v. Gurney, 324 U.S. 100, 104 (1945)). "It is a long-standing principle that a president or other officer of a corporation cannot on his or her own initiative file a voluntary petition for the corporation. Approval of its board of directors is required." Id. at 618 (internal citations omitted). "As a matter of law, the filing of a voluntary petition is not an action done for the purpose of carrying on the ordinary business of a partnership [or corporation]." Id. "Such action undoubtedly is extraordinary." Id. "Whenever a business corporation is insolvent or in financial difficulty, the board of directors may, by resolution and without the consent of shareholders, authorize and designate the officers of the corporation to … file a voluntary petition

6

in bankruptcy." Id. The voluntary petition was instituted by the board of directors and on that ground is valid.

The allegedly applicable provision in the bylaws and adopted resolution indicates that "the Corporation will not engage in any "other" business unless one 100% of the corporation's issued and outstanding voting shares agree." At the same time, paragraph 5.2 Force and Effect of Bylaws provides that "[t]he bylaws are subject to the provisions applicable New Jersey law and to any restrictions or conditions in the corporation's certificate of incorporation, as the same may be amended from time to time. Anything in these bylaws that is inconsistent with applicable law or the corporation's certificate of incorporation shall be null and void."

The parties have not underscored relevant New Jersey State Law asserting a distinction between ordinary business and extraordinary business with respect to a voluntary bankruptcy petition. The Court agrees that the filing of a bankruptcy is not "other" business. In the instant matter, at the time of filing, the corporate entity had defaulted on an obligation and was on the eve of foreclosure. The only way to protect the corporation from being foreclosed upon was to file a voluntary bankruptcy petition. There is no indication that there was any other alternative. Filing the petition was a protective measure and at the time, in the best interest of the corporation. Therefore, the Court concludes that the Appellant is unlikely to succeed on the alleged merits of the appeal.

B.  Irreparable Injury

"In federal courts equity has always only acted when legal remedies were inadequate." AstenJohnson, Inc. v. Columbia Cas. Co., 562 F.3d 213 (3d Cir. 2009) (citing Beacon Theaters, Inc. v. Westover, 359 U.S. 500, 509 (1959). "Discretionary stays pending appeal are governed by Rule 62(c) of the Federal Rules of Civil Procedure and Bankruptcy Rule 8005, and are

in the nature of a preliminary injunction." <u>In re X-Cel Constructors of Delaware, Inc.</u> 76 B.R. 969, 970 (D.N.J. 1987). "The grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" <u>Coast Cities Truck Sales v. Navistar Int'l Tranps. Co.</u>, 147 B.R. 674, 676 (D.N.J. 1992) (citing <u>Frank's GMC Truck Center, Inc. v. General Motors Corp.</u>, 847 F.2d 100, 102 (3d Cir. 1988)(" We cannot sustain a preliminary injunction . . . where either or both of these prerequisites[, likelihood of success on the merits and irreparable injury,] are absent.")). In reviewing a bankruptcy court's denial of a motion for a stay, the <u>In re Hastings </u>Court recognized that in refusing to grant the stay of a sale of the property, the bankruptcy court reasoned that "the harm to the bankruptcy estate would exceed any benefit to the [movants] if the stay were granted." 2009 U.S. District LEXIS 16931, *9 (D.N.J. Mar. 5, 2009).

    Appellant asserts irreparable injury in that a failure to stay the sale renders the appeal before this Court moot. By contrast, Appellees assert that Appellant will be in the same position regardless of whether the appeal is successful or not, namely that Appellant's only injury is economic. The Court agrees.  Regardless of whether the property is foreclosed upon or disposed of pursuant to the bankruptcy petition, the property inevitably will be sold before completion.

    Appellant seeks to stay the sale because Appellant wishes to attain a greater financial benefit upon sale of the property. Appellant alleges that the present appraisal value of the property is $16,000,000 and the prospective value of the completed property is around $25,000,000. In the absence of evidence of an actual offer for sale, Appellant presents the Court with a hypothetical.

    In the absence of a sale, the insolvent corporation will continue to detrimentally accumulate

debt. Appellant cannot unilaterally and permanently foreclose bankruptcy to the detriment of the corporate entity and to the detriment of all other shareholders. Therefore, the purported harm alleged by Appellant is far outweighed by the harm Appellant seeks to impose on the corporate entity and other shareholders.

There is no indication that Appellant seeks to relieve the other shareholders of their obligations by purchasing the corporation in its entirety and assuming all outstanding debt. The Court can neither compel the directors and officers of the corporation to continue service nor can the Court compel the corporate entity and shareholders to incur increased debt from an insolvent entity where a feasible alternative is immediately available. Appellant has not satisfied this factor and therefore, the equitable remedy sought is not warranted under the circumstances.

    C.    Substantial Harm

Appellant does not directly address the status of the other litigants with respect to the proposed stay of the sale, however, Appellant does offer a general assertion that no one will be harmed by a stay given that the appeal is returnable in mid-March. Appellees assert that granting the stay will result in continued and unwarranted economic harm where secured creditors have already agreed to reduce the amounts owing in exchange for consummating the sale of the property.

    D.    Public Interest

Appellant asserts that there is strong public interest in the opportunity to be heard before an appeal is rendered moot. Further, Appellant alleges that a stay is warranted because an investigation of the transaction between Debtor and Buyer's principals is valuable. Further, Appellant alleges that the only individual to benefit from the sale is the Trustee and its law firm.

The Court concludes that to the extent a valid public interest exists, in the instant matter, the issues of success on the merits, irreparable harm and substantial harm to litigants favor a denial of the stay.

**III.** CONCLUSION

For the foregoing reasons, Appellant's motion to stay pursuant to Fed. R. Bankr. P. 8005 is **denied**. An appropriate order accompanies this opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Dated: March  1 , 2010
Original: Clerk
cc: All Counsel of Record
 Hon. Mark Falk, U.S.M.J.
 File